[No. A048211. First Dist., Div. Two. June 21, 1991.]

MONTIE S. DAY, Plaintiff and Appellant, v.
CHRISTINA JURIS PAPADAKIS et al., Defendants and Respondents.

## COUNSEL

Montie S. Day, in pro. per., for Plaintiff and Appellant.

Rasch-Cabot, Ram & Amatruda and Michael F. Ram for Defendants and Respondents.

## OPINION

**KLINE, P. J.**—Montie S. Day appeals a judgment of the Alameda County Superior Court dismissing his complaint against respondents Christina Juris Papadakis and George Papadakis following the grant of summary judgment on the complaint and its severance from a cross-complaint filed by respondents. Appellant challenges the award of attorneys' fees to respondents, contending that entry of judgment on the complaint alone violated the one final judgment rule, that the court erred in designating respondents as the prevailing party, and that fees awarded were excessive and unsupported by the evidence. As we explain below, we believe the court erred in entering final judgment on the complaint where a cross-complaint was pending. We repudiate the view that our opinion in *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 [123 Cal.Rptr. 669], created a new exception to the one final judgment rule based upon severance alone. Hence, the award of attorneys' fees was premature and must await resolution of the issues raised in the cross-complaint.

*Statement of the Facts/Statement of the Case*

In February 1979, respondents Christina and George Papadakis sued appellant Montie Day, Bruce Zelis, and others in an action involving a limited partnership formed for the purpose of acquiring a pistachio ranch in Madera County, California. (Papadakis v. Zelis et al., (Super. Ct. Alameda County, No. 517133-6).) In 1980, on Zelis's behalf, appellant filed a baseless cross-complaint for indemnity against respondents' then attorneys, Zimmerman & Kalkstein (collectively Zimmerman). In 1982, the trial court granted

Zimmerman's summary judgment motion. In 1983, Zimmerman filed a separate malicious prosecution action against appellant and Zelis (Zimmerman v. Zelis et al., (Super. Ct. Alameda County, No. 570417-1)).

In March 1986, respondents, appellant and Zelis settled Papadakis v. Zelis et al.[1] Respondents were no longer represented by Zimmerman, having substituted a different firm in 1984. The settlement was memorialized chiefly in a document entitled "Compromise Settlement and Mutual Release." However, as part of the settlement, the parties executed a "Mutual Release and Hold Harmless Agreement" prepared by appellant. The latter document provides that "In the event legal action is commenced to enforce this Release and Hold Harmless Agreement, the prevailing party shall have and recover all reasonable attorney fees and costs." The compromise settlement and mutual release had no attorneys' fees provision.

On October 1, 1986, appellant filed the complaint in this action, alleging the mutual release and hold harmless agreement required respondents to indemnify him for any recovery in the Zimmerman's action. Respondents were not parties to the Zimmerman action and that action was not mentioned in any of the settlement documents.

Respondents cross-complained against appellant for breach of the compromise settlement and mutual release.[2]

On December 13, 1988, appellant filed an amended complaint alleging respondents had breached the settlement agreement consisting of both the compromise settlement and mutual release and the mutual release and hold harmless agreement.

On June 1, 1989, the trial court granted respondents' motion for summary judgment on appellant's complaint. The trial court stated that respondents could submit a judgment. On June 19, 1989, the trial court signed a severance order severing the complaint from the cross-complaint.[3] On July 3, 1989, the trial court entered its order granting summary judgment and also entered a judgment against appellant. The judgment provides that "[p]laintiff

---

[1] After signing the settlement documents, Day moved to dismiss for failure to prosecute. In an unpublished opinion (No. A038112) we reversed the judgment of dismissal obtained by appellant and Zelis.

[2] The cross-complaint also contained a claim for abuse of process. However, the trial court sustained a demurrer to that claim on March 2, 1989, prior to the entry of judgment in this case.

[3] The severance order provided: "The Court having granted summary judgment for defendants in *Day* v. *Papadakis*, No. 617450-5; [¶] IT IS HEREBY ORDERED that the complaint in *Day* v. *Papadakis* is severed from the cross complaint in *Day* v. *Papadakis* and from *Papadakis* v. *Zelis*, No. 623675-1."

Montie Day shall pay defendants' costs and including reasonable attorneys' fees" pursuant to the attorneys' fees provision of the mutual release and hold harmless agreement. On July 13, 1989, respondents served appellant with a notice of entry of judgment and with a notice of ruling for the severance order. Appellant did not appeal from the entry of the judgment or from the severance order.

Respondents moved the trial court to fix the amount of attorneys' fees. On November 17, 1989, the trial court fixed the amount of fees at $28,251.79. On December 6, 1989, appellant filed a notice of appeal from that order.

I.

The central issue presented is whether an appealable final judgment resulted from severance of the complaint from the cross-complaint and entry of judgment on the complaint. Respondents argue that by failing to appeal in a timely manner from the judgment entered on the complaint, appellant forfeited his right to appeal the judgment, the designation of respondents as prevailing parties and their entitlement to attorneys' fees. They assert appellant may challenge only the amount of fees awarded. Appellant responds that entry of judgment was premature. Hence, his failure to appeal within the statutory time limits cannot preclude him from challenging entry of the judgment or the fee award and that the court erred in awarding fees in the absence of a final appealable judgment. We agree with appellant.

In civil matters, our appellate jurisdiction is limited to the judgments and orders described in Code of Civil Procedure section 904.1. Only *final* judgments are appealable under that statute, which effectively codifies the "one final judgment rule" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal §§ 43-44, pp. 66-68; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (Rutter 1989) §§ [2.21]-[2.23], pp. 2-8 - 2-9), "and there cannot be such a final judgment with respect to parties as to whom a cross-complaint remains pending, even though the complaint has been fully adjudicated. (9 Witkin, *supra*, § 56, p. 78.)" (*California Dental Assn.* v. *California Dental Hygenists' Assn.* (1990) 222 Cal.App.3d 49, 59 [271 Cal.Rptr. 410].)

The rule is premised on the theory that "piecemeal disposition and multiple appeals tend to be oppressive and costly" (*Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959, 966 [231 Cal.Rptr. 241]) and that "informed, compact appellate review is best obtained by awaiting the entire action's coherent resolution in the trial court . . . ." (*California Dental Assn., supra,* 222 Cal.App.3d at p. 59, citing *Kinoshita* v. *Horio, supra.*)

■ There are exceptions to the rule, however. Even though issues remain for future determination, a direct appeal may be taken from (1) a "collateral" final judgment or order directing the payment of money by the appellant or the performance of an act by or against the appellant (e.g., *Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]; *Efron* v. *Kalmanovitz* (1960) 185 Cal.App.2d 149, 154-155 [8 Cal.Rptr. 107]); (2) a judgment which finally determines all issues as to one of the parties (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 567-568 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another point in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1]); and from (3) a judgment or order finally disposing of a cause of action that has been severed from separate and independent causes of action remaining to be tried. (*Schonfeld* v. *City of Vallejo, supra,* 50 Cal.App.3d 401, 416-419.) ■ The effect of the one final judgment rule has been avoided and a premature appeal saved by amending the judgment on appeal as required and construing the notice of appeal as from the amended judgment. This device will only be utilized where all issues necessary to a disposition of the remaining causes of action have been decided by the trial court or can be decided as a matter of law on the basis of the record. (See *DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 432-433 [160 Cal.Rptr. 899]; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524 [322 P.2d 933], disapproved on another point in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 900 [157 Cal.Rptr. 693, 598 P.2d 854]; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201 [137 Cal.Rptr. 118]; but see *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 691 [242 Cal.Rptr. 84], criticizing the practice and serving notice that the court would no longer save such premature appeals.) Finally, "[t]here is authority for discretionary review as a matter of appellate policy where the order or judgment which does not dispose of the entire case is nonetheless statutorily appealable, albeit inconsistent with the one final judgment concept." (*DeGrandchamp* v. *Texaco, Inc., supra,* 100 Cal.App.3d 424, 436, citing *Guntert* v. *City of Stockton* (1974) 43 Cal.App.3d 203 [117 Cal.Rptr. 601].) Such would be the case where the statute recognizes an order granting injunctive relief as an appealable order. (Code Civ. Proc., § 904.1, subd. (f).) (*Guntert* v. *City of Stockton, supra,* at p. 208; but see Eisenberg et al., *supra,* § [2:25], pp. 2-10, criticizing this practice.)

■ Here, it is conceded that the judgment disposed of fewer than all issues between the parties and thus did not render the action final as to a party. Nor does anyone argue that the court impliedly disposed of the issues on the cross-complaint which remains pending. Rather, respondents contend that the judgment entered on the complaint was appealable, as it was severed from the cross-complaint under Code of Civil Procedure section 1048, and because the complaint raised issues that were "separate and distinct" from

(or "wholly independent" of) those raised by the cross-complaint. (*DeGrandchamp* v. *Texaco, Inc., supra,* 100 Cal.App.3d at pp. 433-435; see *Schonfeld* v. *City of Vallejo, supra,* 50 Cal.App.3d 401, 418.)

## II.

Respondents rely upon our opinion in *Schonfeld* v. *City of Vallejo, supra,* 50 Cal.App.3d 401, as authority for the proposition that because the complaint was severed from the cross-complaint under Code of Civil Procedure section 1048, subdivision (b), the judgment on the complaint was appealable before conclusion of the rest of the action.

In *Schonfeld* an appeal from a judgment of dismissal on a severed cause of action was allowed despite the existence of a declaratory relief cause of action remaining between the parties. Language in that opinion may appear to suggest that severance alone might support separate appeals. "Under [Code of Civil Procedure section 1048], a trial court has broad discretion to consolidate or sever causes of action and will not be reversed on appeal except for an abuse of discretion. Clearly, the declaratory relief cause of action here was properly severed as it raises issues separate and independent from those of the first two causes of action. [¶] We hold, therefore, that in the instant case, since the first two causes of action were properly severed, a final judgment resulted, even though the independent fourth cause of action is still pending between the same parties." (50 Cal.App.3d at pp. 418-419, fn. omitted.)

However, *Schonfeld* was soon interpreted as having allowed the appeal *not* because of the severance, but because the severed cause of action was independent of the remaining ones. *DeGrandchamp* v. *Texaco, Inc., supra,* 100 Cal.App.3d 424, notes at page 435: "It is clear . . . that the court in *Schonfeld* recognized an exception from the one judgment rule *only* where the causes of action not disposed of are 'separate and distinct' from the cause of action upon which judgment is rendered." (Italics added.) Similarly, *James Talcott, Inc.* v. *Short* (1979) 100 Cal.App.3d 504 [161 Cal.Rptr. 63], allowed review of a partial summary judgment only because severance of the first causes of action left causes of action which were "totally 'independent.' " (*Id.,* at p. 506, fn. 1, citing *Schonfeld, supra,* 50 Cal.App.3d at pp. 418-419.) More recently, in *National Auto & Casualty Ins. Co.* v. *Frankel* (1988) 203 Cal.App.3d 830 [250 Cal.Rptr. 236], the court concluded that "[t]he severance of the complaint from the cross-complaint does not make the judgment on the complaint separately appealable, unlike the situation in *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 . . . , because the complaint raises issues closely related to those posed by the yet-untried cross-complaint. Hence we lack jurisdiction to hear the appeal." (*Id.,* at pp.

832-833.)[4] (Cf., *Roy Brothers Drilling Co.* v. *Jones* (1981) 123 Cal.App.3d 175, 180 [176 Cal.Rptr. 449], holding appeal of judgment rendered on cross-complaint premature and violative of one final judgment rule where cross-complaint remained pending, but saving the appeal by amending judgment to dispose of cross-complaint where clearly abandoned.)

In *Armstrong Petroleum Corp.* v. *Superior Court* (1981) 114 Cal.App.3d 732 [170 Cal.Rptr. 767], then Court of Appeal Justice Kaufman's analysis of *Schonfeld* also emphasized the independence of the severed claims, but further noted that the purported severance in *Armstrong* had been ordered only after disposition of the "severed" causes of action and thus was done solely for the purpose of creating an appealable judgment rather than for the "*separate trial*" that Code of Civil Procedure section 1048 envisions. Thus, "there was no occasion for any severance pursuant to the statute" (*id.*, at p. 736), and "the 'severance' order was in excess of the court's authority . . . ." (*Id.*, at p. 737.)

*Armstrong* distinguishes *Schonfeld* as follows: "It is true that *one factor* considered by the *Schonfeld* court in determining that the judgment before it was appealable was that the causes of action dismissed by the judgment had been severed by the trial court from a remaining cause of action. However, the severance . . . was not for the purpose of making the judgment appealable but for the purpose of having separate trials because 'it raises issues separate and independent from those of the first two causes of action.' (50 Cal.App.3d at p. 418.) In other words, at the time it was made, the order for separate trial in the *Schonfeld* case was appropriate and authorized by the statute.

"Moreover, as we read the *Schonfeld* decision, its ratio decidendi was that 'the circumstances here presented are so unusual that postponement of the appeal until the final judgment on Schonfeld's fourth cause of action would cause so serious a hardship and inconvenience as to require [the court] to augment the number of existing exceptions [to the single judgment rule].' (50 Cal.App.3d at p. 418.)

"In any event, as the *Schonfeld* court specifically recognized, the Supreme Court has expressly held that ' "[t]here cannot be a separate judgment as to one count in a complaint containing several counts [between the same parties]. On the contrary, there can be but one judgment in an action no matter how many counts the complaint contains. [Citations.]" ' (50

---

[4]The court proceeded to treat the appeal as a petition for a writ of mandate (citing *Olson* v. *Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720]) and decided the case on its merits. (*National Auto & Casualty Ins. Co.* v. *Frankel, supra,* 203 Cal.App.3d at p. 833.)

Cal.App.3d at p. 417 . . . .) The *Schonfeld* court also expressly recognized that 'even though a cause of action is severed and tried separately, pursuant to Code of Civil Procedure section 1048, a separate judgment is not necessarily the result. [Citations.]' (50 Cal.App.3d at p. 417, . . .) The judgments that are appealable are specified by statute. (See Code Civ. Proc., § 904.1.) *Code of Civil Procedure section 1048 provides no authority for a trial court to enlarge the class of appealable judgments by ordering a 'severance.'* " (*Armstrong, supra,* 114 Cal.App.3d 732, 736-737, italics added.)

*Armstrong*'s analysis is correct: Severance was just *one factor* in *Schonfeld* and was ordered only because the severed cause of action was separate and distinct from the remaining cause of action; severance was not designed to create an appealable judgment that would not otherwise exist; which, in any event, would have exceeded judicial authority. Nevertheless, Witkin analyzes *Schonfeld* as predicated solely on Code of Civil Procedure section 1048 (9 Witkin, Cal. Procedure, Appeal, *supra,* § 66, pp. 90-91) and *Armstrong* as predicated solely on the distinction that the severance in *Armstrong* was made without authority and for an improper purpose. (*Id.,* § 66 (1990 Supp.) p. 11.)

Recent cases involving severance of a complaint and cross-complaint similarly follow *Armstrong* in holding that "severance" of a complaint from a cross-complaint merely to permit an early appeal exceeds the superior court's authority and is ineffectual. (*California Dental Assn.* v. *California Dental Hygienists' Assn., supra,* 222 Cal.App.3d 49, 59; *Will* v. *Engebretson & Co.* (1989) 213 Cal.App.3d 1033, 1038 [261 Cal.Rptr. 868].)[5]

Even under these authorities, then, the appeal here is premature. The trial court granted severance *after* orally granting respondents' summary judgment on the complaint and instructing respondents' counsel to prepare a judgment in favor of respondents, including an award of attorneys' fees from appellant to respondents. In these circumstances, it is apparent severance was sought by respondents and granted by the court to make the judgment on the complaint final immediately and avoid the bar of the one final judgment rule.

However, at least some courts appear to have interpreted *Schonfeld* as holding that severance *alone* will support an appealable judgment on a severed claim. It is these cases upon which respondents primarily rely. In

---

[5]However, both courts ultimately entertained the appeals and proceeded to the merits. The orders appealed from in both cases were final as to some, but not all parties, an established exception to the one final judgment rule. Therefore, the court in *Will* v. *Engebretson & Co., supra,* at page 1039, entertained the appeal and the court in *California Dental Assn., supra,* at page 60, treated the defective portion of the appeal as a petition for writ of mandate.

*Highland Development Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 169 [215 Cal.Rptr. 881], it was held that a trial court's "separate consideration of the full merits of [a] cause of action for writ of mandate, and the court's expression of determination to treat that claim independently of the other causes of action remaining to be tried [declaratory and injunctive relief], together indicate at least a de facto severance, much as was perceived in the *Schonfeld* case," and thus that an appeal from an order denying the writ, but not resolving the other causes of action, was appealable. (*Id.*, at p. 179.) The opinion, which states no independent reason for finding the order appealable and gives no facts suggesting one, apparently relies on severance alone (de facto severance at that) and fails to discuss *Armstrong* or any of the other cases adopting a more constrained interpretation of *Schonfeld*.) Witkin cites *Highland* for the proposition that "de facto severance" is now an exception to the one final judgment rule. (9 Witkin, Cal. Procedure, *op. cit. supra*, § 66 (1990 Supp.) p. 11; see also Eisenberg et al., *supra*, at § [2:107], pp. 2-32 - 2-33.)

*Bank of the Orient* v. *Town of Tiburon* (1990) 220 Cal.App.3d 992 [269 Cal.Rptr. 690], apparently abandons even the Witkin limitation that the severance must not be for the sole purpose of allowing immediate appeal. The court there cites *Schonfeld* and Witkin as authority for allowing appeal of a severed action *even where severance was undertaken "in order that a final judgment could be entered."* (220 Cal.App.3d at p. 998 and fn. 8, italics added.)

If *Schonfeld* is read as Witkin, *Highland*, and *Bank of the Orient* suggest, then the appealability of an order or judgment no longer depends on "finality" in any objective sense, but instead on the intent or even apparent intent (in cases of de facto severance) of the trial judge who orders severance. Such a rule plays havoc with litigation, creating uncertainty, a flood of protective appeals and cross-appeals, disincentives to try cases completely, delay in the trial court and grave potential for clogging appellate court dockets. (Cf. *Kinoshita* v. *Horio*, *supra*, 186 Cal.App.3d 959, 966-968.)

The mere fact of severance should not be allowed to abrogate the one final judgment rule. We agree with the analysis of *Schonfeld* set forth in *Armstrong*, that the focus of *Schonfeld* was upon the " ' "*separate and independent*" ' " character of the issues raised in the severed causes of action and that the circumstances there presented were " '*so unusual*' " that postponement of final judgment on the appealed claim would cause " '*serious hardship and inconvenience.*' " (*Armstrong Petroleum Corp.* v. *Superior Court*, *supra*, 114 Cal.App.3d at pp. 736-737, quoting *Schonfeld* v. *City of Vallejo*, *supra*, 50 Cal.App.3d at p. 418, italics added.)

Hence, we examine whether the complaint and cross-complaint raise "separate and independent" issues and whether the circumstances of this case are "so unusual" as to warrant abandonment of the rule in this instance.

## III.

Both the complaint and the cross-complaint seek damages for breach of the settlement. Respondents labor mightily to distinguish the claims presented in each pleading, arguing that the complaint was based solely upon their purported breach of the mutual release and hold harmless agreement, whereas the cross-complaint was based upon appellant's breach of the compromise settlement and mutual release agreement. They further argue that even if appellant were to defeat their claims on the cross-complaint, he would not prevail on a claim of his own and would not be entitled to attorneys' fees or fee offset as there is no fee provision in the compromise settlement and mutual release.

As we see it, the crux of both claims is the settlement negotiated between the parties as memorialized in *both* agreements, which are inextricably intertwined. The mutual release and hold harmless agreement states that it "is conditioned upon the execution of documents which will effectuate the compromise agreement entered into before the Superior Court of the State of California, County of Alameda, in the case entitled *Papadakis* v. *Bruce P. Zelis,* Case No. 517133-6, such agreement being a part of the consideration for this Release and Hold Harmless Agreement." The referenced documents could only be the compromise settlement and mutual release and associated documents. Appellant's amended complaint referred to both settlement documents, and charged that respondents had breached *both* written agreements (exhibits A-1 and A-2 to the amended complaint) and had refused to perform the written settlement agreement.

We cannot view the complaint and cross-complaint as raising wholly separate and independent claims. Were that the case, we would nonetheless hesitate to ignore the one final judgment rule in this case in the absence of highly "unusual" circumstances or demonstrated serious hardship to respondents. Postponing the award of fees until resolution of the cross-complaint does not amount to circumstances so unusual or hardship so severe that it warrants premature and piecemeal review.

## IV.

Finally, respondents cite *Worth* v. *Asiatic Transpacific, Inc.* (1979) 93 Cal.App.3d 849 [156 Cal.Rptr. 110], as supporting the immediate

appealability of partial summary judgment, despite the pendency of an unresolved cross-complaint. In *Worth*, the court stated that ". . . the existence of an unresolved cross-complaint filed by appellants against respondent would not preclude the trial court granting a partial summary judgment which was appealable." (*Id.* at p. 856.) However, as has been pointed out, the appeal in *Worth* "was not from the granting of summary judgment but from an order granting the respondent's motion for a new trial and vacating the summary judgment in appellants' favor. The trial court's concession that an improper judgment was granted caused the appellate court to speculate that the trial court may have considered the judgment premature in light of a pending cross-complaint. The appellate court therefore gratuitously opined that the ' "new statute [Code of Civil Procedure section 437c] thus allows entry of a partial summary judgment before the remaining issues are tried. [Citation.]" ' (*Ibid.*) The opinion sheds no light on what constitutes a properly awarded 'separate judgment' nor points out the basis for an exception to the one judgment rule." (*American Nat. Bank* v. *Stanfill* (1988) 205 Cal.App.3d 1089, 1095-1096 [252 Cal.Rptr. 861].)[6]

We therefore reverse the order of the trial court granting respondents' attorneys' fees and remand the matter to the trial court to await disposition of the cross-complaint and the entry of a single, net judgment.

Each party shall bear its own costs on appeal.

Smith, J., and Benson, J., concurred.

---

[6]We do not believe that the summary judgment statute itself serves as an exception to the one final judgment rule. The language of that section expressly prohibits appellate review of an order granting summary judgment prior to the termination of the action, "[e]xcept where a separate judgment may properly be awarded . . . ." (Code Civ. Proc., § 437c, subd. (j).) (See *American Nat. Bank* v. *Stanfill, supra*, at p. 1095.)