[No. A049637. First Dist., Div. Two. May 22, 1991.]

CHRISTINA JURS PAPADAKIS et al., Plaintiffs and Respondents, v. BRUCE P. ZELIS, Defendant and Appellant.

## COUNSEL

Bruce P. Zelis, in pro. per., for Defendant and Appellant.

Michael F. Ram for Plaintiffs and Respondents.

## OPINION

**KLINE, P. J.**—Appellant Bruce P. Zelis, an attorney litigant appearing pro se, abused the appellate process by prosecuting a frivolous appeal for the purpose of delay. After we dismissed the appeal and indicated we were considering the imposition of sanctions, appellant filed a federal bankruptcy petition and informed us that, as a result, he was invulnerable to monetary sanctions. We will hold that an attorney cannot prevent the imposition of sanctions by filing a federal bankruptcy petition.

I.

### FACTS AND PROCEDURAL HISTORY

The relevant facts may be briefly summarized. Zelis was respondents' former attorney; in 1974, he persuaded them to invest in a pistachio-growing limited partnership of which he was the general partner.

Disputes between the parties resulted in litigation in 1979; that litigation settled, immediately prior to trial, in 1986. Under the terms of the settlement,

Zelis agreed to pay respondents $120,000, to resign as general partner, and to cooperate in the election of a new general partner. As part of the settlement, the parties released all their claims relating to the subject matter, and Zelis stipulated to a judgment against himself of $120,000, entry of which was to be stayed as long as Zelis abided by the settlement agreement. In the event he did not, it was stipulated respondents could secure entry of judgment against Zelis by filing a declaration asserting Zelis's noncompliance. The parties essentially stipulated, in other words, that respondents could unilaterally cause the entry of judgment.

Zelis did not agree to the election of a new general partner and did not pay respondents the $120,000. Respondents filed in the trial court a declaration to this effect, together with motions to enforce the settlement and enter judgment.

While those motions were pending, Zelis procured an order from another department of the trial court which dismissed the action for failure to prosecute. Respondents appealed; in 1989, this court reversed, remanding "for further proceedings on the motion to compel enforcement of the judgment."

Respondents then again brought a motion for entry of judgment against Zelis in the trial court, pursuant to the stipulation and settlement and this court's direction. The trial court entered judgment against Zelis pursuant to the parties' prior stipulation. Zelis appeals from this judgment—to the terms of which he had previously stipulated.

## II.

### DISCUSSION

#### A. *Frivolous Nature of the Appeal*

■ Sanctions are clearly appropriate for Zelis's filing of a frivolous appeal: Zelis cannot appeal from a judgment to which he previously stipulated as part of a settlement between the parties. This frivolous appeal was clearly brought for the improper purpose of delaying the day when Zelis would have to finally pay over the $120,000 he promised to pay in 1986.

It is settled that a party cannot appeal from a judgment to which he has stipulated, as part of a settlement. (*Reed* v. *Murphy* (1925) 196 Cal. 395, 401 [238 P. 78] ["Concluding, as we must, that the appellants consented to the decree in the precise form in which it was rendered, that they thereby waived any errors therein, and that it is not void upon its face, there remains nothing

to be reviewed upon an appeal therefrom, and the appeal is dismissed"]; accord *Delagrange* v. *Sacramento Sav. & Loan Assn.* (1976) 65 Cal.App.3d 828, 831 [135 Cal.Rptr. 614] [appeal dismissed where appellant had stipulated to the court's judgment of dismissal. "Having consented to the judgment of dismissal, he may not appeal therefrom. [Citations.]"].)

Such frivolous appellate conduct justifies the imposition of sanctions, for the reasons stated by *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]: "An appeal taken for an improper motive [such as mere desire for delay] represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts." (*Ibid.*; see also *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1985) 176 Cal.App.3d 480, 491 [222 Cal.Rptr. 228] ["This appeal . . . [is] deserving of appropriate sanctions[,]" where the appellant "at this late date is using this appeal to attempt to renege on the express terms of a settlement agreement it freely entered into"].)

Zelis's feeble attempts to manufacture appealable issues failed completely. His argument that the trial court's entry of judgment violated the one final judgment rule is frivolous for many reasons, among them the fact that the judgment is certainly a final order as to Zelis, even if there *were* some other issue pending as to another party. A judgment final as to a party is a valid final judgment. (*Rocca* v. *Steinmetz* (1922) 189 Cal. 426, 428 [208 P. 964].) Moreover, even if Zelis were correct and the entry of judgment were not a final order, the remedy would still be to dismiss this appeal from the supposedly interlocutory order, as respondents requested.

Zelis also claimed the trial court did not conduct an evidentiary hearing, and instead entered judgment based upon respondents' declaration, as the stipulation for entry of judgment expressly contemplated. Having stipulated that a declaration showing Zelis's noncompliance would be sufficient, his contention that he was entitled to an evidentiary hearing was frivolous; further, he did not state what relevant evidence, if any, could be produced at such a hearing. He also complained that entry of judgment in this action was improper because there are other lawsuits still pending between the parties; this contention is a non sequitur since the existence of other pending actions does not affect the finality of this one, or alter the fact that Zelis stipulated to entry of judgment in this action. We cannot countenance such a shameless effort to unjustifiably prolong litigation.

## B. *The Bankruptcy Petition*

We sent Zelis an order to show cause, stating (as required by *In re Marriage of Flaherty, supra*) we were considering the imposition of sanctions, and would allow him to file additional pleadings and present argument directed to that issue. Zelis responded by a letter stating that he had filed a federal bankruptcy petition, which he claimed prevented us from considering the imposition of sanctions. Zelis did not appear at the hearing on the order to show cause; respondents did appear and presented oral argument.

Going beyond due process requirements, we called Zelis's attention to the decision in *O'Brien* v. *Fischel* (D.Hawaii 1987) 74 B.R. 546, in which a federal court rejected a similar claim of invulnerability to sanctions, and invited him to respond. The attorney in *O'Brien* claimed the district court could not impose sanctions upon him under rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), which authorizes the imposition of sanctions for frivolous or abusive filings in the federal courts, because the attorney had recently filed a petition for bankruptcy which operated as an automatic stay. The court rejected this argument, noting that section 362(b)(4) of title 11 of the United States Code provides an exception to the automatic stay for " 'the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; . . . .' " (74 B.R. at p. 548.) *O'Brien* held that a court's imposition of sanctions upon an attorney came within this exception. (74 B.R. at p. 550.)

We reach the same conclusion. It was never intended that the automatic stay provision would become an "escape mechanism" (74 B.R. at p. 551) from the enforcement by the courts of their inherent regulatory power over attorneys' abuses of the court system. "Like physicians, attorneys are licensed by the state. Courts have an interest in punishing professional misconduct, no less than state regulatory agencies, in order to prevent future [abusive] acts of the same type. Whether or not [an attorney's] conduct has sunken to the level of malpractice, . . . the discouragement of such pleading practices is a valid regulatory concern of this court." (*Id.*, at p. 550.)

We therefore now hold that the imposition of sanctions by the courts of this state for attorneys' frivolous or abusive litigation tactics cannot be obstructed by the federal bankruptcy laws.

Despite his prior argument to the contrary, Zelis has now conceded as much. In response to our request for his position on the applicability of *O'Brien*, Zelis conceded the case is persuasive authority for our present

holding rejecting Zelis's argument. Rather, Zelis now seeks yet another hearing on the order to show cause. We deny the request for further oral or written argument. A court need not reset a matter merely because an attorney refused to appear when the matter was first argued. Zelis has had more than enough opportunities to present his views to this court.

We impose sanctions, payable to respondents, in the requested amount (supported by declaration under penalty of perjury) of $5,498.03 in compensation for the attorneys' fees and costs expended by respondents in these frivolous appellate proceedings.

Further, pursuant to *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581], and *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 136-137 and footnote 40 [260 Cal.Rptr. 369], we assess sanctions payable to the clerk of this court in the amount of $4,000 for the cost to the taxpayers of this state of processing this frivolous appeal. We will also request that the Office of the Attorney General take whatever further actions may be necessary to defend the taxpayers' interests in any bankruptcy proceedings.

This opinion constitutes a written statement of the facts requiring the imposition of sanctions in this case. Finally, as required by law, a copy of this opinion will be forwarded to the State Bar of California. (Bus. & Prof. Code, § 6086.7.)

### III

#### DISPOSITION

Bruce P. Zelis is assessed sanctions of $5,498.03, and is directed to pay this amount to the respondents, together with their costs on appeal. Bruce P. Zelis is also assessed and directed to pay the clerk of this court sanctions in the sum of $4,000.

Smith, J., and Benson, J., concurred.